UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HEIDI PIKE,                              )
                                         )
        *Plaintiff*                   )
                                         )
v.                                       )     No. 2:14-cv-535-DBH
                                         )
CAROLYN W. COLVIN,                       )
*Acting Commissioner of Social Security,* )
                                         )
        *Defendant*                   )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that (i) the administrative law judge violated the notice of hearing that he issued following an Appeals Council remand by refusing to permit the plaintiff to testify, (ii) his refusal to permit that testimony also violated due process, (iii) he failed to comply with the Appeals Council's remand order, (iv) he improperly rejected opinions of treating physician Benedict Farino, M.D., and (v) new and material evidence submitted to the Appeals Council following the administrative law judge's post-remand decision independently warrants remand. *See* Plaintiff's Statement of Errors ("Statement of

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Errors") (ECF No. 13) at 9-17. I find no reversible error and, accordingly, recommend that the court affirm the decision.

## I. Background

The plaintiff filed the SSD application at issue on February 12, 2010, claiming that she had been disabled since 2005. *See* Record at 209. By decision dated April 16, 2012, the administrative law judge determined that she last met the insured status requirements of the Social Security Act on December 31, 2008, *see* Finding 1, Record at 211, as a result of which, to be eligible for SSD benefits, she had to prove that she was disabled on or before that date, *see, e.g., Moreau v. Colvin*, No. 1:14-CV-191-JHR, 2015 WL 1723230, at *2 (D. Me. Apr. 14, 2015).[2] He concluded that she was not disabled at any time from July 25, 2005, her amended alleged onset date of disability, through December 31, 2008, her date last insured. *See* Finding 11, Record at 219. In reaching that decision, he gave weight to the residual functional capacity ("RFC") opinions of several agency nonexamining consultants, *see id*. at 216, and rejected those of two treating sources, Dr. Farino and Joshua Greenspan, M.D. *see id*. at 217.

Dr. Farino had stated, in an RFC assessment dated March 21, 2012, that he had seen the plaintiff on 24 occasions from September 20, 2006, through March 9, 2012, treating her for headaches, depression, myofascial pain, syncope, and high blood pressure, and she suffered side effects from medications that included drowsiness, forgetfulness, and difficulty with concentration. *See id*. at 2567. He checked boxes indicating that she had a number of difficulties in maintaining regular employment, including that she probably could not maintain regular

---

[2] As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors and Motion To Admit New Evidence ("Opposition") (ECF No. 16) at 1 n.3, the plaintiff's Fact Sheet states that she also filed an application for Supplemental Security Income ("SSI") benefits, *see* ECF No. 13-1, attached to Statement of Errors. The commissioner notes, *see* Opposition at 1 n.3, and at oral argument the plaintiff's counsel acknowledged, that the SSI application was rejected on the basis of financial ineligibility, *see* Record at 377, as a result of which no SSI claim is before the court.

2

attendance and be punctual within customary and usually strict tolerances, probably could not consistently complete a normal work day and work week without interruptions from physically based symptoms, and would be absent from work more than four days per month. *See id*. at 2568. Asked to describe accommodations that the plaintiff might require, he stated: "I'm not sure she could work even with accommodations @ this time given side effects of her medications and syncopal episodes that are under evaluation." *Id*. Asked to check a box indicating what exertional level of work she could perform (*e.g*., very heavy, heavy, medium, light, sedentary), he referred to his prior answer and stated, "I don't think she can reasonably work @ this time." *Id*. at 2570. He checked "Yes," in response to a question whether "the patient's functional limitations described herein likely persisted since 7/25/2005 (date last worked)?" *Id*. at 2571.

> The administrative law judge explained:
>
> Little weight has been given to recent RFC assessments from [Drs. Farino and Greenspan] because their evaluations are neither timely nor consistent. Dr. Greenspan did not begin treating the [plaintiff] until 2009, and so he is not in a position to evaluate her condition as it existed between 2005 and 2008. Furthermore, Dr. Greenspan contradicted himself, checking off that the [plaintiff's] limitations had likely persisted since 2005, yet simultaneously writing that since she underwent a procedure in June 2011, "these restrictions no longer apply[."] While Dr. Farino, on the other hand, has treated the [plaintiff] since 2006, his evaluation still specifically opines, twice, that his patient cannot "reasonably work *at this time*[,"] meaning March 2012. This is plainly not indicative of the [plaintiff's] static medical status as it existed for the previous 7 years, despite his checking off a pre-formulated questionnaire indicating [that the plaintiff's] status had persisted thus. A treating physician's opinion is given controlling weight only when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.

*Id*. at 217 (citations omitted) (emphasis in original).

By order dated April 18, 2013, the Appeals Council granted the plaintiff's request for review, vacating the April 16, 2012, decision and remanding the case to an administrative law

3

judge for resolution of the lack of "an adequate evaluation of the treating source opinion" of Dr. Farino. *Id*. at 228. The Appeals Council explained:

> The Administrative Law Judge affords little weight to Dr. Farino's opinion because he states the [plaintiff] cannot "reasonably work at this time[."] The decision indicates this statement limits the opinion to March of 2012, which is four years after the date last insured, and that it negates dating the limitations assessed back to 2006. However, the decision does not discuss the treating relationship, specialty, or whether the opinion is consistent with and supported by the evidence in the record. The assessment also does not indicate it is limited to March 2012. If the opinion was accepted, the [plaintiff] would be unable to sustain competitive employment. Therefore, further evaluation of the opinion evidence is warranted.

*Id*. (citations omitted).

The Appeals Council directed the administrative law judge, on remand, to "[g]ive further consideration to the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence." *Id*. at 229. It explained:

> As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the [plaintiff] could still do despite the impairments. The Administrative Law Judge may enlist the aid and cooperation of the [plaintiff's] representative in developing the evidence from the [plaintiff's] treating source.

*Id*. (citations omitted). It also directed the administrative law judge, "[i]f warranted by the expanded record, [to] obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the [plaintiff's] occupational base." *Id.* (citation omitted). It concluded, "In compliance with the above, the Administrative Law Judge will take any further action needed to complete the administrative record and issue a new decision." *Id*.

The administrative law judge sent the plaintiff a notice of hearing dated May 15, 2013, advising, (i) under the heading "More About the Issues," that the hearing was a supplemental hearing pursuant to the Appeals Council's order, (ii) under the heading "Remarks," that a

4

vocational expert would testify, and (iii) under the heading, "What Happens At the Hearing?," that he would "ask you and any other witnesses to take an oath or to affirm that the testimony is true[,]" "[y]ou will have a chance to testify and tell me about your case[,]" and "I will ask you and any other witnesses questions that will help me make a decision in your case." *Id*. at 324-25.

By letter to the administrative law judge dated July 26, 2013, the plaintiff's counsel amended his client's alleged onset date of disability to December 30, 2008, and advised that he intended to have the plaintiff's mother, Judith Pike, testify at the hearing as a fact witness. *See id*. at 539.

At the supplemental hearing, held on August 1, 2013, the administrative law judge admitted evidence that had been belatedly tendered less than five days prior to the hearing, *see id*. at 183-85, including a July 24, 2013, form and attached letter from Dr. Farino, *see id*. at 2789-90. In that form, Dr. Farino stated that the restrictions set forth in his 2012 RFC opinion "still apply to [the plaintiff]." *Id*. at 2789. He checked a box, "Yes," in response to a question whether, based on his treatment history with the plaintiff and knowledge of her impairments, he agreed with her statements that "she suffers from chronic headaches which significantly limit her ability to perform her daily activities, concentrate, express herself effectively, and cause[] forgetfulness." *Id*. He indicated that he diagnosed the plaintiff with myofascial pain syndrome, which is the same as fibromyalgia, on July 18, 2008, performing tender/trigger point testing as part of that diagnosis. *See id*. Asked to "add . . . any additional comments or statements [that he] want[ed] to make explaining the reasons why [he] believe[d] [the plaintiff] still has these restrictions, as well as any other comments [he] wish[ed] to make[,]" Dr. Farino referred to his attached letter, in which he stated:

> This is to comment on the [plaintiff] in regards to why I believe she is still unable to work. The biggest challenge for her since I last filled out the form on March 21,

5

>2012, has been continued headaches and side effects of the medications to treat her headaches. She continues to require opioid medications, amongst other medications, to treat severe headaches. Because of the headaches and the side effects of the medications used to treat her headaches (including drowsiness, forgetfulness, reduced energy, and difficulty concentrating), I don't believe she could participate in any meaningful employment.

*Id.* at 2790.

At hearing, the administrative law judge raised the issue that the plaintiff's counsel had indicated that the plaintiff's mother would testify. *See id.* at 186. The following colloquy ensued:

>ALJ: I really hadn't anticipated much testimony at all today. We did complete an administrative record that contemplated the entire period preceding the date last insured. That testimony in the prior hearing remains as part of this record. . . . So I would not anticipate that we would be addressing anything historical.
>
>ATTY: No, this is not historical. The only thing that's changed – I agree with you. The only thing that's changed is my client has had to move in with her parents. And as a result, because in part she can't care for her children because of her chronic headaches. So I was simply going to have my client's mother talk about that period of time since she moved in.
>
>ALJ: That's really not relevant to the issues that are before me. The appeals council simply instructed me to give further consideration to the treating source statement. And if necessary to take vocational expert testimony. We do also have a complete record from the last hearing. Any conditions existing after the date last insured, so I don't see that you have any testimony today to present that would shed any light on the issues that the appeals council has directed me to address.
>
>ATTY: Well based on your reevaluation, based on the appeals council remand and your now reevaluation of Dr. Farino's records and testimony from the VE [vocational expert], it seems to me that it certainly [is] relevant when [sic] my client's RFC has continued to be since the last hearing and since Dr. Farino's opinion. I would think that's implicit –
>
>ALJ: You're talking about whether the claimant has established disability as of the date last insured.
>
>ATTY: Correct. But I would assume that's going forward as well.
>
>ALJ: And don't we have a full record that discusses current limitations and current condition?
>
>ATTY: We have a very full record since the date last insured, your honor.

6

> ALJ: So I'm not persuaded that under the appeals council's order I'm required to take any testimony. In fact, the appeals council order, in a very odd turn, did not require me to offer the opportunity for hearing today. I did want to though have an on the record proceeding, Mr. Bernstein, to allow you the opportunity to present argument to me about how I should evaluate Dr. Farino's opinions now.

*Id*. at 187-88.

The plaintiff's counsel then noted, for the record, his objection to the ruling. *See id*. at 189. The administrative law judge inquired as to the basis for the objection. *See id*. The plaintiff's counsel elaborated that, in his view, the right to present testimony was "implicit" in the Appeals Council's remand order. *Id*. He pointed to language directing the administrative law judge to "complete the administrative record," which he interpreted to direct the administrative law judge to complete the record "with respect to what [the plaintiff's] condition has been and what her symptoms have been, which is fully set forth in the record, no doubt, but from her perspective how her chronic headaches have affected her since" the initial hearing. *Id*. at 189-90.

He acknowledged, however, as the administrative law judge pointed out, that "[t]here are much clearer [A]ppeals [C]ouncil[] decisions which say very clearly there will be another hearing." *Id*. at 190.

The administrative law judge then heard oral argument from the plaintiff's counsel on the merits and closed the hearing, with the plaintiff's counsel protesting that he had wanted the plaintiff and her mother to testify but that the administrative law judge had made his ruling. *See id*. at 190-95.

Following the hearing, the administrative law judge issued a decision dated September 5, 2013, in which, but for a change in the plaintiff's alleged onset date of disability, he made the same findings as in his 2012 decision. *Compare* Findings 1-11, *id.* at 118-123 *with* Findings 1-11, *id*. at 211-19. He explained:

The undersigned is not persuaded to alter his opinion, and still accords little weight to Dr. Farino's opinion. More specifically, the record shows that Dr. Farino is one of several internists at Maine Medical Partners, with whom the [plaintiff] established care in September 2006, though she continued to see other providers at the same practice. After the initial visit, Dr. Farino then saw the [plaintiff] for an annual examination in January 2007, and for an episode of abdominal pain in January 2008 after a tubal ligation. His records show he then saw the [plaintiff] three times in the summer of 2008 to address what he opined was *possibly* fibromyalgia (or myofascial pain syndrome), where the [plaintiff] reported diffuse joint pain; she reported symptom improvement with the medication Lyrica, and Dr. Farino told her he was going to wean her off Oxycodone. However, as already established in the previous decision, the doctor's examination and records fail to satisfy the Agency requirements regarding this condition, and so fibromyalgia is not medically determinable in this case.

Dr. Farino then treated the [plaintiff] twice in August and September 2008 for right ear cellulitis after a shunt adjustment; once for headache in December 2008, and he did not see her again until April 2009, for follow-up of upper respiratory infection. At the April 2009 appointment, Dr. Farino noted that the [plaintiff] had come under pain management care with Dr. Greenspan.

Therefore, the undersigned gives little weight to Dr. Farino's 2012 evaluation, in which he stated twice that his patient "could not work . . . *at this time* given side effects of her medications and syncopal episodes that are under evaluation" (emphasis added). The doctors' records, as just cited, fail to demonstrate that she was functioning at the same level at the end of 2008 as she was in 2012, when he completed the form. The [plaintiff] was not experiencing syncope in 2008, nor was she taking the same medications. The AC [Appeals Council] noted that Dr. Farino's assessment "does not indicate it is limited to March 2012." The *plain* language of Dr. Farino's opinion indicates otherwise. The opinion simply does not lend itself to an interpretation that the limitations apply to any period up to, and including, the [plaintiff's] date last insured.

First, the doctor only treated the [plaintiff] twice prior to 2008, and when he did treat her in earnest, 6 months before the date last insured, his primary assessment was for myofascial pain. Second, the doctor did not cite objective, physical findings at any of these examinations that are reflective of an incapacitated individual. In fact, his records show he did not always examine the [plaintiff], reporting instead only [] her subjective complaints, and that he more often than not provided very little definitive or objective details of [her] physical status.

For example, when Dr. Farino first saw the [plaintiff] for reported shoulder and neck pain in June 2008, he clearly stated that he did not examine [her], and he wrote, "Whether or not this represents fibromyalgia I have not decided to qualify as I don't think it would help [her] very much. That said, I would like to get her off narcotic medications and have reinforced limiting oxycodone 30 tablets per month

8

> ultimately with hopes of keeping her off narcotics. . . . I am going to trial Lyrica 25." Dr. Farino then noted that the [plaintiff] asked, "that I not send a copy of this note to Dr. Seasholtz which is a little bit concerning[."] This reference is to Katherine Seasholtz, D.O., a treating provider at Maine Centers for Health Care, who was the primary provider of narcotics for the [plaintiff] at this time, and who was also prescribing oxycodone.
>
> Accordingly, Dr. Farino's 2012 evaluation is not consistent with the preponderance of the clinical data, including his own treatment records, and so his assessment is of little evidentiary use. A treating physician's opinion is given controlling weight only when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.
>
> The undersigned has also considered a recent evaluation provided by Dr. Farino, but it is neither helpful nor material, since it is duplicative, prospective, and indicative of the [plaintiff's] <u>current</u> level of functioning. Like the 2012 assessment, this 2013 evaluation does not relate appropriately to the period before the date last insured.

*Id.* at 120-22 (citations omitted) (emphasis in original).

The plaintiff appealed the 2013 decision to the Appeals Council on several bases, including the submission of medical evidence that she argued was not only new since the 2013 hearing but also material, specifically, records of 2013 and 2014 visits to Steven Petrin, N.P., and Leonid Temkin, M.D., of Southern Maine Health Care Pain Clinic (sometimes referred to as Goodall Pain Clinic) (either or both, "Pain Clinic"). *See id*. at 552-53; *see also id*. at 14-109.

The Appeals Council declined to review the 2013 decision, explaining, with respect to the Pain Clinic evidence:

> The Administrative Law Judge decided your case through December 31, 2008, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits. Moreover, we found this information does not show a reasonable probability that, either alone or when considered with the other evidence of record, [it] would change the outcome of the decision.

*Id*. at 2 (citation omitted).

## II.  Applicable Legal Standards

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982). The record must contain substantial evidence in support of the commissioner's findings regarding the claimant's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## III.  Discussion

### A.  Violation of Hearing Notice

The plaintiff first complains that the administrative law judge violated his own hearing notice when he did not permit the plaintiff to testify at the post-remand hearing. *See* Statement of Errors at 9-10.[3] The commissioner counters that the language on which the plaintiff relies, from the section "What Happens At the Hearing?," was merely general language describing how a hearing typically works, not how it would work in this case. *See* Opposition at 7-8. She argues

---

[3] While the plaintiff argued, in her brief, that the administrative law judge erred in precluding both her testimony and that of her mother, *see* Statement of Errors at 9-10, her counsel noted at oral argument that she presses only a claim of error as to the preclusion of her own testimony.

that, in any event, the plaintiff has not shown how any error in failing to permit the testimony prejudiced her.  *See id*. at 8-9.

The language on which the plaintiff relies does appear to be boilerplate.  *See* Record at 325.  Nonetheless, the notice pertained to the *plaintiff's* upcoming hearing, and she and her counsel reasonably construed it to indicate that she and other witnesses would be afforded a chance to testify at the post-remand hearing.  This is troubling, for an administrative notice of hearing, like a court order, should mean what it says.  This notice did not.  In that respect, it was misleading.

Yet, as the commissioner contends, *see* Opposition at 7-9, the plaintiff fails to demonstrate that this unfortunate error warrants remand.  First, as discussed below, the administrative law judge did not simply bar the proffered testimony outright.  He permitted the plaintiff's counsel to argue in favor of its presentation.  He was unpersuaded that the proffered testimony was either required by the Appeals Council's remand order or relevant.  For the reasons discussed below, I find that he did not abuse his discretion in so concluding.  "An administrative law judge may set reasonable limits on testimony."  *York v. Colvin*, No. 1:13-cv-00311-JDL, 2014 WL 4181616, at *6 (D. Me. Aug. 21, 2014*); see also, e.g., Jessie v. Commissioner of Soc. Sec. Admin.*, Civil No. 07-900-CL., 2007 WL 4577372, at *2 (D. Or. Dec. 19, 2007) ("The Administrative Law Judge has discretion to manage the hearing, limit cumulative testimony, and otherwise keep the proceedings focused on the relevant issues.").

Second, as discussed below, the plaintiff fails to demonstrate that her testimony would have been sufficiently relevant that its omission was prejudicial.  *See* Statement of Errors at 9-10.  This is fatal to her bid for remand on this ground.  *See, e.g., Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) (a claimant bears the burden to demonstrate harmful error in an agency's determination).

### B. Violation of Due Process

The plaintiff next argues, and her counsel emphasized at oral argument, that the administrative law judge violated her due process rights when he refused to permit her testimony as to her symptoms, side effects from medication, and the impact of her severe impairments on her daily functioning in the interim between her 2012 and 2013 hearings.  *See* Statement of Errors at 10-11.  She complains that, in determining that nothing in the earlier or expanded record changed his evaluation of her claim, the administrative law judge lacked the benefit of her testimony regarding "her severe impairments, her multiple attempts to alleviate her chronic headaches and pain by treatment at the Goodall Pain Clinic and her continuing multiple emergency department visits from 2008 to March 6, 2013, and hospitalizations."  *Id*. at 11.  She adds that the administrative law judge never mentioned or discussed her numerous emergency department visits for chronic headaches.  *See*

The deprivation "of an opportunity to be heard at a meaningful time and in a meaningful manner . . . is the essence of a due process claim."  *Shorey v. Astrue,* No. 1:11-cv-414-JAW, 2012 WL 3475790, at *8 (D. Me. July 13, 2012) (rec. dec., *aff'd* Aug. 14, 2012) (citation and internal quotation marks omitted).  The plaintiff was not deprived of that opportunity.

Both the plaintiff and her mother testified during her first hearing in 2012.  *See, e.g.,* Record at 139, 167.  At the outset of the second hearing in 2013, the administrative law judge explained that he had not contemplated taking testimony.  However, he did not reject the proffer of testimony out of hand but, rather, afforded the plaintiff's counsel the opportunity to argue why it should be permitted.  The plaintiff's counsel offered two reasons: that his client's condition was relevant not only as of her date last insured but also "going forward," and that it was implicit in the Appeals Council's order that she should be afforded a further opportunity to testify.  *Id*. at 187-90.

The administrative law judge declined, on the showing made, to take testimony, and I perceive no abuse of discretion in that ruling. First, while the Appeals Council's remand order can fairly be read to *permit* the administrative law judge to take additional testimony, it cannot fairly be read to *direct* him to do so. *See id*. at 228-29. Second, as the administrative law judge pointed out, the key issue before him was whether the plaintiff was disabled as of her date last insured, December 31, 2008. *See id*. at 188. Despite this, he permitted the plaintiff to submit new evidence at the start of the second hearing, *see id*. at 183-85, and her counsel acknowledged that there already was a full record chronicling her condition since her date last insured, *see id*. at 188.[4]

In any event, even had there been a due process violation, remand is not warranted unless resultant prejudice is shown. *See, e.g., Lewis v. Astrue,* No. 06-121-B-W, 2007 WL 2021912, at *5 (D. Me. July 11, 2007) (rec. dec., *aff'd* Aug. 15, 2007).

At oral argument, the plaintiff's counsel contended that this was a "continuing" disability claim, rendering the entire period through the date of the second hearing relevant. He observed that, had his client been found disabled as of her date last insured, the next step would have been to determine whether her disability continued, and yet the administrative law judge refused to take testimony bearing on that point. He added that his client's disability was also "continuing" in the sense that her condition was chronic and remained the same in 2013 as it had been in 2008, a proposition for which he cited not only Dr. Farino's opinions but also, by way of example, an April 18, 2012, note of consulting neurologist, John Belden, M.D., found at pages 2648-49 of the Record. He suggested that the administrative law judge could not properly evaluate Dr. Farino's opinion

---

[4] At oral argument, the plaintiff's counsel explained that, while he agreed with the administrative law judge that there was a full *medical record*, medical records do not tell a claimant's full story, and he argued to the administrative law judge that critical evidence, in the form of the plaintiff's testimony, was missing for the period between the two hearings. Yet, it remains unclear how this testimony was of more than attenuated relevance.

13

that the plaintiff's condition in 2012 and 2013 was the same as it had been prior to her date last insured without the benefit of her own testimony on her condition during the later time period.

With respect to the first "continuing disability" argument, as counsel for the commissioner rejoined, the administrative law judge never reached the question of whether the plaintiff had a continuing disability because he never found her disabled as of her date last insured. His refusal to take testimony bearing on that point, hence, could not in itself have been prejudicial. With respect to the second "continuing disability" argument, the administrative law judge rejected the proposition that the plaintiff's symptoms were static throughout the period from 2008 forward, noting, for example, that Dr. Farino's own treatment notes "fail[ed] to demonstrate that [the plaintiff] was functioning at the same level at the end of 2008 as she was in 2012, when he completed the form." Record at 121. This conclusion, as I discuss below, was supported by substantial evidence. The plaintiff does not explain how her testimony at the second hearing, if permitted, would have undermined it.[5]

Thus, even had the administrative law judge violated the plaintiff's due process rights when he refused to permit her to testify at the second hearing, she demonstrates no resulting prejudice as required to obtain remand on this basis.

### C. Violation of Remand Order

The plaintiff next contends that the administrative law judge violated the terms of the remand order when he concluded in 2013, as he had in 2012, that Dr. Farino's 2012 RFC opinion pertained to her then-current limitations. *See* Statement of Errors at 12-13. She notes that the

---

[5] The April 18, 2012, note of Dr. Belden also indicates that the plaintiff's headaches, by her own report, had worsened. *See* Record at 2648 (noting that plaintiff, a "long-standing headaches sufferer," was admitted to the hospital "with intractable headaches that have been worse since 4/14/12" following a coughing fit; "[e]ver since then, she has noted that when she is standing up, the headache is much worse than usual, describing a frontal, squeezing pressure pain[,]" and "[w]hen she lies down, the headache improves and she is actually at her baseline headache, which she pretty much always carries.").

Appeals Council stated that the Farino opinion did "not indicate it [was] limited to March 2012." *Id*. at 12 (quoting Record at 228).

I perceive no contradiction with the terms of the remand order.  First, the Appeals Council did not direct the administrative law judge to find that the Farino opinion pertained to any particular time period.  Rather, it concluded that the administrative law judge had failed to provide "an adequate evaluation" of the Farino opinion, including any discussion of "the treating relationship, specialty, or whether the opinion is consistent with and supported by the evidence in the record." Record at 228.  It directed him merely to "[g]ive further consideration" to the opinion.  *Id*. at 229.

Second, even assuming *arguendo* that the remand order required the administrative law judge to find that the Farino opinion was not limited to March 2012, it did not require him to find that this was conclusive in the plaintiff's favor.  *See id*. at 228-29.  Whereas, in his 2012 decision, the administrative law judge offered, as his sole reason for according the Farino opinion little weight, his interpretation that the opinion was limited to the plaintiff's condition as of 2012, in his 2013 decision, he provided additional rationales, including that, although Dr. Farino saw the plaintiff on eight occasions prior to her date last insured, he treated her for headaches on only one of those occasions.  *See id*. at 120-21.

The plaintiff falls short of demonstrating that remand is warranted based on this point of error.

### D.  Handling of Dr. Farino's 2012 and 2013 Opinions

The plaintiff next asserts that the administrative law judge's decision to accord little weight to both the 2012 and 2013 Farino opinions is unsupported by substantial evidence.  *See* Statement of Errors at 13-16.  I am unpersuaded.

### 1. 2012 Opinion

The plaintiff argues that, in contravention of the remand order, which directed the administrative law judge to assess whether the 2012 opinion was "consistent with and supported by the evidence in the record[,]" he considered only any inconsistency with Dr. Farino's own treatment records. *See id*. at 14 (quoting Record at 228). She complains that he ignored her many emergency department visits for chronic headaches in 2008, 2009, 2011, and 2012, her hospitalization from August 11-14, 2008, for pain management because of headaches, and her hospitalization from September 21-25, 2008, for replacement of a shunt that had been implanted in 2003 for pseudotumor cerebri. *See id*.; *see also id*. at 4. She adds that he overlooked records of her treatment at Maine Neurology, including a December 17, 2008, note by Georgann Dickey, MS, ANP, that she had had chronic headaches for more than nine years that had been refractory to a variety of preventive medications. *See id*. She points out that the administrative law judge also failed to discuss evidence postdating her 2012 hearing, including evidence of ongoing emergency department visits and of treatment by Dr. Temkin and Nurse Practitioner Petrin at the Pain Clinic. *See id*. at 14-15; *see also id*. at 6-8.

The plaintiff's point is not well taken. The administrative law judge complied with the dictate that he consider the record evidence generally. While he focused in his 2013 decision on Dr. Farino's records, he incorporated his 2012 decision by reference, *see* Record at 115, 120, deeming the 2012 Farino opinion inconsistent "with the preponderance of clinical data, including [Dr. Farino's] own treatment records," *id*. at 122

As the commissioner points out, *see* Opposition at 13-14, in his 2012 decision, the administrative law judge discussed some of the evidence that the plaintiff complains he overlooked, including Maine Neurology records and shunt adjustments in the summer of 2008, *see*

Record at 216. He noted, for example, that, in December 2008, Nurse Dickey assessed "chronic headache of low intensity with exacerbated migraine features approximately once per month." *Id.* (citation omitted).

While he did not discuss her August 2008 hospitalizations, he cited the exhibit in which they were contained, Exhibit 16F, in acknowledging her long history of chronic headaches. *See id.* at 212; *see also, e.g., id.* at 1107-08. As the commissioner notes, *see* Opposition at 14, he also relied on the RFC opinions of agency nonexamining consultants who noted their review of much of the evidence to which the plaintiff points, *see* Record at 216, 1727, 1757-58.

The administrative law judge alluded to evidence postdating his 2012 decision when he stated that nothing in either the earlier evidence "or in the expanded record" changed his initial evaluation of the plaintiff's claim. *Id.* at 120. The plaintiff does not explain how this evidence, which is even more remote from her date last insured of December 31, 2008, bears on her condition as of that date or could have been outcome-determinative had the administrative law judge expressly discussed it. *See* Statement of Errors at 14-15.

### 2.  2013 Opinion

The plaintiff next takes issue with the administrative law judge's handling of Dr. Farino's 2013 opinion, arguing that (i) it was not duplicative but rather confirmed that Dr. Farino's opinion remained unchanged, (ii) it was not prospective but, rather, confirmed that the plaintiff's functional limitations had likely persisted since July 25, 2005, the date she last worked, and (iii) it was not indicative only of the plaintiff's current level of functioning but, rather, confirmed the continuation of her functional limitations since December 2008. *See id.* at 15.

Regardless of whether the 2013 Farino opinion was duplicative or prospective, the administrative law judge supportably rejected it on the ground that it addressed the plaintiff's functioning as of July 24, 2013. Dr. Farino did not state that the restrictions he assessed in his

2013 opinion applied as of December 31, 2008. *See* Record at 2789-90. Rather, he stated that the restrictions he assessed in 2012 "*still* apply" to the plaintiff, that he agreed that she "suffers" – present tense – "from chronic headaches which significantly limit her ability to perform her daily activities, concentrate, express herself effectively, and cause[] forgetfulness[,]" and that he "believe[d] she is *still* unable to work." *Id*. (emphasis added). The administrative law judge reasonably construed the 2013 opinion as describing the plaintiff's then-current limitations. In turn, he supportably deemed it immaterial.

### E. New Evidence

The plaintiff finally seeks remand based on evidence postdating the 2013 decision that he submitted to the Appeals Council. *See* Statement of Errors at 16-17.

In *Mills v. Apfel,* 244 F.3d 1 (1st Cir. 2001), the First Circuit made clear that there are two circumstances in which remand based on submission of evidence subsequent to the issuance of an administrative law judge's decision is appropriate: (i) when that evidence is new and material *and* a claimant demonstrates good cause for its belated submission and (ii) when, regardless of whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Mills,* 244 F.3d at 5-6.

The plaintiff invokes the first ground. *See* Statement of Errors at 16-17. She argues that, "[a]lthough this evidence describes [her] more recent treatment for her chronic migraine headaches and chronic pain, it demonstrates that [her] debilitating headaches have continued since the amended alleged onset date[,]" further supporting "Dr. Farino's first and second treating source opinions by demonstrating the disabling impact of her severe migraine headache impairment." *Id*. at 17. She contends that, because the new evidence demonstrates that additional more drastic treatment, including the implantation of an occipital nerve stimulator, did not resolve her headaches, it validates Dr. Farino's first and second opinions. *See id*.; *see also id*. at 5.

18

As the commissioner counters, *see* Opposition at 17, the plaintiff fails to demonstrate that the new evidence is "material." It does not necessarily follow that, because her headaches in 2013 and 2014 were refractory even to drastic treatment, they were equally debilitating as of December 31, 2008. As noted above, the administrative law judge pointed to competing RFC opinions and to evidence from 2008 and early 2009, including Dr. Farino's treatment records, that indicated otherwise.

Beyond this, as the commissioner points out, *see id.*, the Appeals Council specifically considered and rejected the plaintiff's argument that this same evidence was material, reasoning that it did not shed light on her condition as of the relevant date, *see* Record at 2. The plaintiff does not even argue that its conclusion was "egregiously mistaken." *See* Statement of Errors at 16-17.[6]

### IV. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

---

[6] As the commissioner points out, *see* Opposition at 16-17, to the extent that the plaintiff seeks the inclusion of the new evidence in the record, *see* Statement of Errors at 17, no relief need be granted. The evidence is already included in the record. *See* Record at 14-109.

19

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

      Dated this 3rd day of October, 2015.

                                          <u>/s/  John H. Rich III</u>
                                          John H. Rich III
                                          United States Magistrate Judge